THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FRANCISCO ZEPEDA,<br><br>    **Plaintiff,**<br><br>v.<br><br>WEXFORD HEALTH SOURCES, INC., ROB JEFFREYS, LATOYA HUGHES, DEBBIE KNAUER, DAVID MITCHELL, M. LIVELY, CHRISTINE BROWN, BOB BLUM, and DR. PERCY MYERS,<br><br>    **Defendants.** | Case No. 3:24-cv-02455-GCS |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Plaintiff Francisco Zepeda, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Centralia Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while at Pinckneyville Correctional Center. In the Complaint, Zepeda alleges he was delayed and denied medications for his medical conditions in violation of the Eighth Amendment.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.[1] Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any

---

[1]  The Court has jurisdiction to screen the Complaint due to Plaintiff's consent to the full jurisdiction of a Magistrate Judge (Doc. 6), and the limited consent to the exercise of Magistrate Judge jurisdiction by the IDOC and Wexford Health Sources, Inc. as set forth in the Memoranda of Understanding between the Court and these two entities.

portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

## THE COMPLAINT

Zepeda alleges that he suffers from hypertension, atrial fibrillation ("AFib"), congestive heart failure, and sleep apnea. (Doc. 1, p. 4). He is prescribed several medications including Losartan, Hydralazine, Carvedilol, Imdur, Aspirin, Cardizem/Diltiazem, Lasix, Potassium, and Clonidine. *Id*. Some of his medications were labeled "keep on person" ("KOP") meaning he carried the medication with him and took as directed. But the medications were taken from him because healthcare staff did not believe he was taking the medications properly. On June 21, 2022, he wrote a grievance indicating that on June 9, 2022, his blood pressure was 161/117, and he was not able to receive medications, including Lasix, Losartan, Carvedilol, and Potassium, from the medline nurse. *Id*. Because his medications were taken away, he was now on direct observation therapy ("DOT") meaning that he had to receive the medications directly from the nurse. *Id*. From June 18 through June 21, Zepeda also went without his Cardizem prescription for AFib because the nurse did not have the medication at medline. *Id*.

Zepeda alleges that he was denied access to his mediations because there is a policy or practice of prescribing non-narcotic medications as DOT rather than KOP (Doc. 1, p. 5). Zepeda alleges that DOT poses additional risks because he does not receive his medication in a timely fashion due to the time that nurses hand out medications, which can vary from day to day. *Id*. Zepeda made several requests to Christine Brown and Dr.

Myers for his prescribed medications, but they did not believe that he lacked his medication. *Id*. On July 26, 2022, Administrative Review Board ("ARB") members Debbie Knauer and Rob Jeffreys signed off on the grievance, noting that Warden David Mitchell was to ensure that all medications were administered correctly. *Id.*

On September 14, 2022, Zepeda submitted another grievance arguing that the DOT policy was affecting his health due to medication errors and the failure to monitor his blood pressure. (Doc. 1, p. 5). M. Lively denied his grievance without investigating his claims. *Id*. On May 10, 2023, Zepeda submitted another grievance about medication errors associated with his KOP medications. *Id*. Zepeda noted that when he turned in his KOP medications with doses left in the pack, the doses were not accurately documented. Lively and Knauer denied the grievance. *Id*.

On April 15, 2023, Zepeda submitted a grievance complaining that he went without his Losartan medication from March 15 through April 12. (Doc. 1, p. 6). He submitted several requests for refills to Brown and Dr. Myers. *Id*. His requests were ignored. He did not receive his medication until nurse sick call on April 14, 2023. *Id*. His grievance was denied.

On May 21, 2023, Zepeda submitted another grievance because he went without his Losartan from April 26 through May 17. He again made requests for refills to Brown and Dr. Myers to no avail. (Doc. 1, p. 6). On May 17, 2023, Physician Assistant ("PA") Desai refilled his medication. His grievance was again denied. On October 2, 2023, he submitted a grievance about going without his heart medication Diltiazem from September 28 through October 26. *Id*. He, again, made several requests to Brown and Dr.

Myers for refills but was ignored. *Id*. On October 26, 2023, he met with NP Bob Blum and his blood pressure was 168/120. *Id*. He informed Blum about his requests and grievance. Zepeda asked Blum if the healthcare unit had been informed of his grievance. *Id*. Blum responded that Zepeda could "catch more flies with sugar" and then placed Zepeda on DOT. Zepeda explained the risks of DOT and his issues with medlines in the past, but Blum still required Zepeda to receive his medication DOT. *Id*. His grievance was denied. In response to a subsequent grievance about missing medications, Christine Brown responded that Zepeda had not received his Diltiazem since September but that she had the pharmacy place an order that day. *Id*. at p. 7. The ARB denied his grievance, and Latoya Hughes signed off on the denial. *Id*.

On June 23, 2024, Zepeda submitted another grievance over his concerns of receiving his medication DOT and argued that his medication should be labeled KOP. (Doc. 1, p. 7). Zepeda alleges that most of his blood pressure medications at that point were KOP except for his Hydralazine. *Id*. In response, Brown indicated that the medication was switched to DOT because he was refusing to come to medline. Zepeda maintains that her response was a lie. *Id*. His grievance was denied.

### PRELIMINARY DISMISSALS

To the extent Zepeda seeks to bring a claim against the Illinois Department of Corrections, he fails to state a claim. Zepeda cannot maintain a claim against IDOC because it is not a "person" amendable to suit under Section 1983. *See*, *e.g.*, *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) (stating that "neither a State nor its officials

acting in their official capacities are 'persons' under [Section] 1983"). Any claim against the IDOC is, thus, **DISMISSED with prejudice**.

Zepeda also alleges that numerous officials denied his grievances or failed to properly investigate the grievances regarding his medical care. He alleges that Defendants M. Lively, Debbie Knauer, Rob Jeffreys, and LaToya Hughes failed to investigate Zepeda's claims and correct the issues he experienced in response to his grievances. But their simple denial or mishandling of a grievance fails to state a claim. *See Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008). There are no allegations to suggest that they participated in his medical care or prescribed Zepeda with medication. Thus, any claims against the grievance officials, including Lively, Knauer, Jeffreys, and Hughes, are **DISMISSED without prejudice**.

Zepeda also fails to state a claim against David Mitchell. He alleges that, as warden, Mitchell failed to use his authority to investigate and correct the issues with Zepeda's medication. But there are no allegations to suggest that Mitchell was aware of Zepeda's medication issues or involved in his medical care. *See, e.g.*, *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999) (stating that the relevant inquiry is whether defendants "actually knew about the plaintiff's condition, not whether a reasonable official should have known"). Zepeda merely alleges that in response to a grievance the ARB noted that as warden, Mitchell was to ensure that all medications were administrated correctly. But there are no allegations suggesting that Zepeda informed Mitchell of the issues with his medications. Thus, any claim against Mitchell is also **DISMISSED without prejudice**.

## DISCUSSION

Based on the allegations in the Complaint, the Court designates the following counts:

> **Count 1:** Eighth Amendment deliberate indifference claim against Dr. Percy Myers, Bob Blum, and Christine Brown for delaying Zepeda access to his medications.
>
> **Count 2:** Eighth Amendment deliberate indifference claim against Wexford Health Sources, Inc. for having a policy and/or practice of requiring inmates to receive certain medications under direct observation therapy (DOT).

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[2]

At this stage, Zepeda adequately alleges a deliberate indifference claim in Count 1. Zepeda alleges that there were delays in receiving numerous prescriptions and that he went many days without his medications because Dr. Myers, Blum, and Brown refused to refill them in a timely fashion. These delays could amount to deliberate indifference. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016); *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (delay in treatment). He also

---

[2] *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

alleges that he was improperly placed on DOT for his medications, and Defendants were deliberately indifferent to his need for KOP medications. Thus, Count 1 shall proceed against Dr. Percy Myers, Bob Blum, and Christine Brown.

As to Count 2 against Wexford, the company can only be liable if it had a policy or practice that caused the constitutional deprivation alleged in the pleading. *See Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653-654 (7th Cir. 2021); *Woodward v. Correctional Medical Services of Illinois, Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). Zepeda must show that the alleged constitutional violation was caused by: "(1) an express policy that cause[d] a constitutional deprivation when enforced; (2) a widespread practice that [wa]s so permanent and well-settled that it constitute[d] a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021) (quoting *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019)). Alternatively, a plaintiff must show that "the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Dixon v. County of Cook*, 819 F.3d 343, 348 (7th Cir. 2016). Zepeda alleges that Wexford has a policy and practice of limiting several medications to DOT rather than KOP. Zepeda alleges that this policy has led to delays in receiving his medications. At this stage, that is enough to state a claim for Wexford regarding its medication policy.

Zepeda also alleges that Wexford has a policy, practice, and custom of officials believing inmates are lying because they are inmates. But Zepeda only points to a few instances where he alleges that certain individuals did not believe him. He notes that a

KOP medication was taken from him because the physician did not believe he was taking the medication. (Doc. 1, p. 4). He alleges that Brown and Dr. Myers did not believe that he was missing medications. *Id*. at p. 5. But he fails to allege that this practice was so pervasive as to constitute a policy of Wexford's. Zepeda merely states in conclusory fashion that Wexford promoted a belief that inmates are liars which is not enough to state a claim. *Id*. at p. 7. Thus, any claim against Wexford for staff members' failure to believe Zepeda is **DISMISSED without prejudice**.

## DISPOSITION

For the reasons stated above, Count 1 shall proceed against Christine Brown, Dr. Percy Myers, and Bob Blum. Count 2 shall proceed against Wexford. All other claims and defendants are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Defendants Christine Brown, Dr. Percy Myers, Bob Blum, and Wexford Health Sources, Inc.: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Zepeda. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Zepeda, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

**Because Zepeda's claims involve his medical and mental health care, the Clerk of Court is DIRECTED to enter the Court's standard HIPAA Qualified Protective Order.**

If judgment is rendered against Zepeda, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Zepeda is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply

with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. PROC. 41(b).

**IT IS SO ORDERED.**

**DATED: January 29, 2025.**

Digitally signed by Judge Sison
Date: 2025.01.29 14:26:08 -06'00'

**GILBERT C. SISON**
**United States Magistrate Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**